UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

THE ESTATE OF ELEANOR )
NORTHINGTON, )
 )
          Plaintiff, )
 )
          v. )          No. 1:21-cv-00406-RLM-TAB
 )
CITY OF INDIANAPOLIS, OFFICER LANE )
COOPER, OFFICER ROBERT HALEY JR., )
OFFICER JUSTIN HYDE, OFFICER )
BRUCE JACKSON, and OFFICER )
RONALD MONDAY, )
 )
          Defendants. )

<u>OPINION AND ORDER</u>

The Estate of Eleanor Northington brings multiple claims against the City
of Indianapolis, Officer Lane Cooper, Officer Robert Haley, Jr., Officer Justin
Hyde, Officer Bruce Jackson, and Officer Ronald Monday that arise from the
officers' response to Eleanor Northington's mental health crisis. For the reasons
set forth in this opinion, the court grants in part and denies in part the
defendants' motion for summary judgment.

*FACTS*

In February 2019, Eleanor Northington attended an Indianapolis church
service with her daughter, D'Asia Montgomery, and other family members.
During the service, Ms. Northington, who had a history of bipolar disorder and
schizophrenia, experienced a mental health crisis, and engaged in disruptive

1

behavior. Ms. Northington weighed about 300 pounds. Ms. Northington spit at other parishioners, tried to leave the church, and took her clothes off. Ms. Northington's episode increased in severity as she began to walk up and bang on the pulpit. She grabbed another woman's hair and punched her in the face. Officer Bruce Jackson, an off-duty police officer attending the church service, intervened with other parishioners, and escorted the woman away from Ms. Northington. Ms. Northington's behavior worsened. She yelled at the parishioners, spat on them, and ran around the church. Ms. Montgomery had never seen Ms. Northington have an episode with this severity.

The pastor began praying with Ms. Northington and she began to calm down, but still tried to hit anyone that approached her. She eventually punched another male pastor and continued to spit on anyone who came close. After about an hour and half, Officer Jackson called for police assistance. The dispatch broadcasted that the incident was "a black female who was being combative and refusing to leave." [Doc. No. 74-13]. Officer Jackson talked with Ms. Northington's daughter, who told Officer Jackson that her mom had schizophrenia and wasn't taking her medication.

Officers Robert Haley and Lane Cooper arrived at the scene and met Officer Jackson at the front of the church. Officer Jackson explained to them that Ms. Northington was engaging in aggressive and erratic behavior and that she had a history of mental illness. Officer Jackson didn't tell the responding officers that she had been diagnosed with schizophrenia. Officer Haley requested an ambulance for Ms. Northington once he arrived on scene. After their discussion

with Officer Jackson, Officers Haley and Cooper walked further into the church and saw Ms. Northington sitting calmly in one of the pews. When Officer Haley and Officer Cooper approached Ms. Northington, she yelled at them, and she punched both on them in the face. Officer Haley called in to dispatch that they had a "resistor." [Doc. No. 80-5].

Officers Jackson, Haley, and Cooper struggled to detain Ms. Northington using handcuffs. Officer Hyde arrived on the scene. Ms. Northington continued to kick, scream, spat, and twist. Officer Jackson tried unsuccessfully to perform a leg sweep. After further struggle, the officers were able to get three sets of handcuffs on Ms. Northington and sit her down at a pew. Someone placed a cloth over her face to prevent her from spitting. The officers decided that they should move her to the center aisle between the pews. During the move, Ms. Northington and Officer Jackson tripped and fell. Officers Haley, Cooper, and Hyde moved Ms. Northington onto her stomach and held her down as she was biting, thrashing, kicking, and spitting. Ms. Northington thrashed and moved around the floor and asked the officers to get off her. Officer Hyde held her legs and feet down while Officer Cooper placed his knee on Ms. Northington's lower back. Officer Haley told Officer Cooper to remove his knee from Ms. Northington's back. When Officer Cooper removed his knee from Ms. Northington's back, Officer Haley said "something's not right", noticing Ms. Northington's problem breathing. [Doc. No. 74-3 at p. 35]. The officers backed away from Ms. Northington. The officers removed the cloth from Ms. Northington's face and realized that Ms. Northington wasn't breathing. They began CPR and continued

CPR until the medics arrived. Ms. Northing later died at the hospital. The autopsy report found that Ms. Northington's cause of death was anoxic brain injury in the setting of morbid obesity, cardiac hypertrophy, schizophrenia, and struggle with others.

On October 9, 2019, some eight months after Ms. Northington's death, Ms. Northington's estate, through counsel Larry Pleasants and Jonathan Little, filed a state court complaint against the City of Indianapolis and the Indianapolis Metropolitan Police Department[1]. In January 2020, counsel for the City of Indianapolis emailed Mr. Little and Mr. Pleasants the names of the officers involved in the incident, including all the officers' names in this lawsuit. In March 2020 that complaint was voluntarily dismissed without prejudice because plaintiff's counsel was planning on filing the case in federal court. In late January 2021, Ms. Northington's estate filed a suit against the city of Indianapolis, Indianapolis Metropolitan Police Department, John Doe Police Officers 1-50 in their individual and official capacities, and Mt. Calvary Apostolic Church. That case was removed to federal court on February 22, 2021.

On March 18, 2021, Ms. Northington's estate filed a non-compliant amended complaint with the court, and the court struck the non-compliant amended complaint. [Doc. Nos. 13 and 18]. On March 30, Ms. Northington's filed its amended complaint against the City of Indianapolis and Mt. Calvary Apostolic

---

[1] The court takes judicial notice of the Marion County Super Court Case No 49D13-1910-CT-042205. In re Lisse, 905 F.3d 495, 496 (7th Cir. 2018) (Orders that have been entered by a state court are public records and appropriate subjects of judicial notice).

Church. On April 1, 2021, Ms. Northington's estate filed a second amended complaint against the City of Indianapolis, Lane Cooper, Robert Haley, Jr., Justin Hyde, Bruce Jackson, and Ronald Monday, and Mt. Calvary Apostolic Church.

On July 27, 2021, the court dismissed, per a stipulation between the parties, the Fourteenth Amendment claims with prejudice, and the Fourth Amendment claims against the City of Indianapolis with prejudice. On September 28, 2021, the court acknowledged a stipulation dismissing Ms. Northington's estate's claims against Mt. Calvary Apostolic Church. The parties agree that the only claims that remain are:

1) A Fourth Amendment claims against the individual officers; and

2) An Indiana state law battery claim against the individual officers and the City of Indianapolis.

Now the defendants seek summary judgment on these claims.

## Standard of Review

"Summary judgment . . . is proper only if the pleadings, discovery materials, disclosures, and affidavits demonstrate no genuine issue of material fact such that [the movant] is entitled to judgment as a matter of law." Protective Life Ins. Co. v. Hansen, 632 F.3d 388, 391-392 (7th Cir. 2011); Fed. R. Civ. P. 56(a). The court's function at the summary judgment stage isn't "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249

(1986). In making that determination, the court must construe the evidence, and all inferences that can reasonably be drawn from the evidence, in the light most favorable to the non-moving party. Id. at 249, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions . . . ."). The movant bears the burden of showing that there is no genuine issue of material fact, but the non-moving party "may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Id. at 256.

To defeat a summary judgment motion, "the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694 F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial[,]" Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); see also Fed. R. Civ. P. 56(e)(2). A fact is material if affects the outcome of the case. Monroe v. Indiana Dep't of Transportation, 871 F.3d 495, 503 (7th Cir. 2017). "A factual dispute is genuine only if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Alston v. City of Madison, 853 F.3d 901, 910–911 (7th Cir. 2017) (quoting Carroll v. Lynch, 698 F.3d 561, 564 (7th Cir. 2012)). "[A] party must show what evidence it has that would convince a trier of fact to accept its version of events." Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005).

*Discussion*

SUMMARY JUDGMENT RECORD

The defendants argue that the court can't consider certain materials offered by Ms. Northington's estate. The defendants ask the court to disregard an unsworn transcript by Grady Rogers [Doc. No. 80-17] because it is unauthenticated, unsworn, and hearsay, and two expert reports [Doc. Nos. 80-14 and 80-15] because they are inadmissible in form and the experts were disclosed late.

At summary judgment, the court may only consider admissible facts. *See* Cehovic-Dixneuf v. Wong, 895 F.3d 927, 931 (7th Cir. 2018). Affidavits must set out facts that would be admissible in evidence, *see* Fed. R. Civ. P. 56(c)(4), and other documents may offer facts at summary judgment so long as the party can establish that these facts could be presented in a form that would be admissible, *see* Fed. R. Civ. P. 56(c)(1), (c)(2). The proper question for documents used at summary judgment is whether the facts within them could be made admissible, not whether a foundation has been laid already. *See* Wragg v. Vill. of Thornton, 604 F.3d 464, 466 (7th Cir. 2010) ("the form produced at summary judgment need not be admissible"); Olson v. Morgan, 750 F.3d 708, 714 (7th Cir. 2014) (federal rules "allow parties to oppose summary judgment with materials that would be inadmissible at trial so long as facts therein could later be presented in an admissible form").

Rule 56 permits a "party [to] object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in

evidence." Fed. R. Civ. P. 56(c)(2). Grady Roger's unsworn transcript needn't be authenticated. *See* 11 Moore's Federal Practice Civil § 56.92 (2022) ("Based on the language of the amended rule, courts have held that evidence submitted in support of or opposition to summary judgment need not be authenticated.").

But the transcript isn't simply unauthenticated; it is unsigned and unsworn. An unsigned and unsworn transcript is inadmissible as probative evidence and is ineffective to defeat the motion for summary judgment. *See* Fed. R. Civ. P. 56(e); *see also* First National Bank Co. v. Insurance Co. of North America, 606 F.2d 760, 766 (7th Cir.1979); Steinle v. Warren, 765 F.2d 95, 100 (7th Cir. 1985) (Unsigned and unsworn copy of transcript of interview with inmate, allegedly implicating former investigative agent in alleged break-in at attorney's office, was inadmissible as probative evidence in attorney's action against agent). Absent is any independent evidence—such as sworn declarations—suggesting that the transcript is "what the proponent claims" it is under Fed. R. Evid. 901(a) and (b), which means that the court must apply Rule 56(e) and not consider the evidence. Johnson v. Rogers, No. 116-CV-02705-JMS-MPB, 2019 WL 203115, at *4-5 (S.D. Ind. Jan. 15, 2019), aff'd, 944 F.3d 966 (7th Cir. 2019). The court won't consider Grady Rogers's unsworn, investigation transcript in deciding summary judgment.

The defendants also argue that the court shouldn't consider two expert reports from Dr. Joseph Felo and Robert Pusins because they are inadmissible in form, and Ms. Northington's estate disclosed them late. As explained later in

this opinion, the court doesn't rely on Dr. Felo's statement for purposes of deciding summary judgment.

Mr. Pusins's expert report isn't verified or sworn, and so isn't properly before the court. Scott v. Edinburg, 346 F.3d 752, 759 (7th Cir. 2003); *see also* Howmedica Osteonics Corp. v. Tranquil Prospects, Ltd., 482 F.Supp.2d 1045, 1057 (N.D. Ind. 2007) ("An unsworn and unverified expert report is not Rule 56 evidence that may be relied upon to overcome a motion for summary judgment."). There is no evidence of subsequent verification or reaffirmation of the unsworn expert's report, either by affidavit or deposition, that would allow the court to consider the unsworn expert's report on a motion for summary judgment. DG&G, Inc. v. FlexSol Packaging Corp. of Pompano Beach, 576 F.3d 820 (8th Cir. 2009); *see also* Humphreys & Partners Architects, L.P. v. Lessard Design, Inc., 790 F.3d 532 (4th Cir. 2015). The court won't consider Mr. Pusin's expert report in deciding summary judgment.

FEDERAL LAW CLAIMS AGAINST THE OFFICERS

The individual police officers — Officers Cooper, Haley, Hyde, Jackson, and Monday — move for summary judgment on the basis that the statute of limitations bars Ms. Northington's estate's claims against them.

Ms. Northington's estate doesn't dispute that the statute of limitations is two years. Statute of limitations for a section 1983 claim is governed by state law. Richards v. Mitcheff, 696 F.3d 635, 637 (7th Cir. 2012). Under Indiana law, an action "must be commenced within two years after the cause of action

accrues." Ind. Code § 34-11-2-4. The incident involving the defendant officers occurred on February 6, 2019. The original complaint naming John Doe officers was filed in January 2021. The second amended complaint naming the John Doe officers wasn't filed until after the statute of limitations had run.

Ms. Northington's estate argues that its claims against the individual officers relate back to the original complaint, and the claims survive the two-year statute of limitations. The defendants argue that the claims against the officers don't relate back to the original pleading because the choice to file claims against "John Does" wasn't a mistake pursuant to Rule 15(c)(3). Rule 15(c)(3) allows amended pleadings to relate back to the date of the original pleading when:

> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if [the same claim is asserted] and, within the period provided by Rule 4(m) for service of the summons and complaint, the party to be brought in by amendment
>
> > (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits[2], and
> >
> > (B) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party.

Fed. R. Civ. P. 15.

Rule 15(c) doesn't permit relation back when there is knowledge of the proper party. Wood v. Worachek, 618 F. 2d 1225, 1230 (7th Cir. 1980). Ms.

---

[2] The defendants don't argue that the individual officers didn't receive proper notice of the action and that they would be prejudiced in maintaining a defense, but Ms. Northington's estate's federal claims against the individual officers likely can't relate back to the original complaint because it doesn't meet this prong of Rule 15(c)(3). There is no evidence presented that the individual officers were put on notice of this lawsuit.

Northington's estate argues that the claims brought in the second amended complaint relate back to the original complaint because at the time of the filing of the original complaint, Ms. Northington didn't know the names of the officers. Ms. Northington's estate implies that the officers knew or should have known that the action was being brought against them, but for a mistake in the officers' identities. Ms. Northington's estate relies on Krupski v. Costa Crociere S.p.A., 560 U.S. 538 (2010) to argue that its situation is like the plaintiff in Krupski, who mistakenly sued a subsidiary when she was supposed to sue the parent corporation. The Krupski Court determined that the plaintiff's amended complaint that sued the parent corporation related back to the original complaint. Id. at 555-557.

The mistake in Krupski is not the same as naming a John Doe defendant. See e.g., Herrera v. Cleveland, 8 F.4th 493, 497 (7th Cir. 2021), cert. denied, (2022) (determining that Krupski doesn't change the Seventh Circuit's treatment of John Doe cases under Rule 15); Gomez v. Randle, 680 F.3d 859, 864 n.1 (7th Cir. 2012) (in a John Doe case, a "plaintiff's lack of knowledge about a defendant's identity is not a 'mistake' within the meaning of Federal Rule of Civil Procedure 15(c)").

Ms. Northington's estate's original complaint listed John Doe officers as defendants. It wasn't until after the statute of limitations passed that it amended the complaint to include the individually named officers. Ms. Northington's estate named John Doe defendants knowing the factual and legal differences between the nominal defendant and the proper defendants. The plaintiff in

11

<u>Krupski</u> didn't know that she named the incorrect defendant, but Ms. Northington's estate knew it lacked the proper officers' names. The concept of "mistake" under Rule 15(c)(1)(C)(ii) doesn't extend to a John Doe scenario. <u>Herrera v. Cleveland</u>, 8 F.4th 493, 498 (7th Cir. 2021), cert. denied (2022).

The only other way Ms. Northington's estate's federal claims might survive is through the equitable tolling doctrine.

Ms. Northington's estate argues that equitable tolling should apply to the federal claims against the individual officers because Mr. Pleasants wasn't lead counsel when the City of Indianapolis's counsel provided Ms. Northington's estate with the names of the individual officers. The plaintiff bears the burden of showing he diligently pursued the claim, and some extraordinary circumstances prevented him from filing his complaint within the statute of limitations. <u>Sparre v. United States Dep't of Lab., Admin. Rev. Bd.</u>, 924 F.3d 398, 402–403 (7th Cir. 2019)(internal citations omitted).

Ms. Northington's estate's reasons for amending the complaint past the statute of limitations don't rise to the level of extraordinary circumstances that equitable tolling doctrine requires. Mr. Pleasants has been counsel of record since the original state court 2019 case, and he has been counsel of record since this case was removed to federal court. He was copied on the 2020 email thread when the City of Indianapolis's counsel disclosed the names of the police officers involved in this incident. The court can't apply the equitable tolling doctrine because Ms. Northington's estate presents nothing amounting to extraordinary circumstances that prevented it from filing or amending the complaint within the

statute of limitation. The court grants the defendants' motion for summary judgment on the federal claims against the individually named officers.

STATE LAW CLAIMS AGAINST ALL DEFENDANTS

*State Law Claims Against Officers*

The defendants argue that the Indiana Tort Claims Act bars Ms. Northington's estate's state law battery claim against the individual officers.

The Indiana Tort Claims Act governs state law tort claims against governmental entities and public employees, including intentional infliction of emotion distress and wrongful death claims against a government employee. Wynn v. City of Indianapolis, 496 F. Supp. 3d 1224, 1234 (S.D. Ind. 2020); *see also* Ind. Code § 34-13-3-1 et. seq. The Indiana Tort Claims Act provides that a "governmental entity or an employee acting within the scope of the employee's employment is not liable if a loss results from ... [t]he adoption and enforcement of or failure to adopt or enforce ... a law ... unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(8)(A). This provision immunizes a police officer's conduct when: (1) the officer was acting within the scope of his employment when the injury to plaintiff occurred; and (2) the officer was engaged in the enforcement of a law at that time. Snyder v. Smith, 7 F. Supp. 3d 842, 874 (S.D. Ind. 2014) (*citing* Harness v. Schmitt, 924 N.E.2d 162, 165 (Ind. Ct. App. 2010). Ms. Northington's estate concedes that "because the officers were acting within the scope of his [sic] employment, (Doc. No. 80-

13

3,4,5,6,7) their employer, the City of Indianapolis, can be liable for this battery." [Doc. No. 81, p. 27].

When a suit alleges wrongdoing by a government employee for acts he committed within the scope of his employment, Indiana's Tort Claims Act bars the plaintiff from seeking relief personally against the employee. Ind. Code § 34-13-3-5(b); *see also* <u>Bowens v. City of Indianapolis</u>, No. 1:13-CV-00072-DML, 2014 WL 4680662, at \*5 (S.D. Ind. Sept. 19, 2014). That means that "a plaintiff cannot sue a governmental employee personally if the complaint, on its face, alleges that the employee's acts leading to the claim occurred within the scope of his employment." <u>Singh v. Indiana State Police</u>, No. 1:08-CV-328-SEB, 2009 WL 1579527, at \*7 (S.D. Ind. June 2, 2009) (*citing* <u>City of Gary v. Conat</u>, 810 N.E.2d 1112, 1118 (Ind. Ct. App. 2004)).

Ms. Northington's estate cites to multiple cases supporting its argument that use of excessive force isn't conduct immunized under the Indiana Torts Claims Act. *See e.g.* <u>Wilson v. Isaacs</u>, 929 N.E.2d 200 (Ind. 2010); <u>Crawford v. City of Muncie</u>, 655 N.E.2d 614 (Ind. Ct. App. 1995); <u>City of S. Bend v. Fleming</u>, 397 N.E.2d 1075 (Ind. Ct. App. 1979). All of those cases were suits against the Sheriff's office, police department, or city — not the individual officers. Because Ms. Northington's estate concedes that the individual officers were acting in the scope of their employment, the Indiana Tort Claims Act bars it from bringing battery claims against the individual officers. Ind. Code § 34-13-3-5. The court grants summary judgment on the Indiana state law battery claims against the individual officers.

*State Law Claims Against the City*

Ms. Northington's estate's remaining claim is an Indiana state law battery claim against the City of Indianapolis through a *respondeat superior* theory. The parties agree that the police officers were acting within the scope of their employment with the City of Indianapolis. The defendants make two arguments supporting summary judgment: 1) Indiana's use-of force immunity statute applies; and 2) if the City isn't immune under the use-of-force immunity, the battery claim fails because the officers didn't use excessive or unnecessary force.

## Indiana Use-of-Force Immunity Statute

Indiana's use-of-force immunity statute provides:

(a) As used in this section, "forcible felony" means:

    (1) any offense described under IC 35-31.5-2-138;

    (2) residential entry (as defined under IC 35-43-2-1.5); or

    (3) burglary (as defined under IC 35-43-2-1).

(b) The justified use of force described under IC 35-41-3-2 provides a complete immunity against any claim or action initiated by a person:

    (1) who alleges to have been injured or damaged by any such use of force; and

    (2) whose conduct justified the use of force.

(c) In no case shall any use of force justified under IC 35-41-3-2 give rise to any claim or action for damages or compensation against a person, employer, or estate of a person using such force by or on behalf of any person who:

    (1) was attempting to commit or committing a forcible felony at the time such force was used; or

    (2) was attempting to cause or causing unlawful serious bodily injury to any other person at the time such force was used.

15

This prohibition shall apply to any claim or action brought by the estate, personal representative, spouse, or family member of a person described in subdivision (1) or (2).

(d) If a defendant files a motion under Trial Rule 56 of the Indiana Rules of Trial Procedure and supports that motion with admissible evidence that establishes a prima facie basis for the application of the immunity described in subsection (b) or (c), the burden shall shift to the plaintiff to oppose the motion with admissible evidence directly contradicting the application of the immunity in order to establish a genuine issue of material fact for trial.

(e) In a civil case in which an immunity defense under subsection (b) or (c) is raised, the fact that a defendant was not prosecuted for a crime related to the defendant's use of force shall create a rebuttable presumption that the defendant's use of force was justified under IC 35-41-3-2 and the jury shall be instructed on this presumption if the case proceeds to trial. In a summary judgment proceeding described in subsection (d), the fact that a defendant was not prosecuted for a crime related to the defendant's use of force shall also create a prima facie basis for the application of the immunity described in subsection (b) or (c).

Ind. Code § 34-30-31-1.

Ms. Northington's estate makes several arguments about why the use-of-force immunity statute doesn't apply: the incident occurred before the statute went into effect; the statute violates the constitutional prohibition against ex post facto laws; and Ms. Northington didn't commit a forcible felony under the statute. The city argues that the date of the incident has no effect on the statute's applicability; that what matters is when the statute took effect and when the lawsuit was filed; and that Ms. Northing committed a forcible felony when she committed battery against law enforcement officers and the other parishioners. The court needn't address all these arguments to determine that Indiana Code § 34-30-31-1 doesn't apply to this case.

For the immunity statute to apply, Ms. Northington must have committed a forcible felony. A forcible felony is "a felony that involves the use or threat of force against a human being, or in which there is imminent danger of bodily injury to a human being." Ind. Code § 35-31.5-2-138. The felony in this case, the city argues, is battery under Ind. Code § 35-42-2-1. Under Indiana law, a person commits battery is "a person who **knowingly or intentionally** . . . (1) touches another person in a rude, insolent, or angry manner." Ind. Code § 35-42-2-1(emphasis added). Indiana also provides a defense related to culpability: "A person is not responsible for having engaged in prohibited conduct if, as a result of mental disease or defect, he was unable to appreciate the wrongfulness of the conduct at the time of the offense." Ind. Code § 35-41-3-6.

Ms. Northington was experiencing a mental health crisis during the incident. It can't be determined on summary judgment whether Ms. Northington knowingly and intentionally struck the officers and other parishioners due to her mental state. There is a question of fact as to whether Ms. Northington committed a felony, and so there is a question of fact as to whether the use-of-force immunity statute applies. Although there is no state of mind requirement directly in the use-of-force statute, Ms. Northington must've had intent to have committed a forcible felony.

### Indiana State Law Battery Claim

The City claims judgment as a matter of law on the battery claim because, it says, the officers used no excessive or unnecessary force to detain or subdue

17

Ms. Northington. Ms. Northington's estate disagrees and argues that there is a question of fact as to whether the officers used excessive force.

Under Indiana law, if a police officer uses unnecessary or excessive force, the officer may commit the torts of assault and battery. Ind. Code § 35-41-3-3(b); Wilson v. Isaacs, 929 N.E.2d 200, 203 (Ind. 2010). An actor commits a battery if "(a) he acts intending to cause a harmful or offensive contact with the person of the other or a third person ... and (b) a harmful contact with the person of the other directly or indirectly results." Mullins v. Parkview Hosp., Inc., 865 N.E.2d 608, 610 (Ind. 2007). A battery claim under Indiana law alleging excessive force by law enforcement is measured by the standards for excessive force under the Fourth Amendment. Brooks v. Anderson Police Dep't, 975 N.E.2d 395, 399 (Ind. Ct. App. 2012);  *See also* Fidler v. City of Indianapolis, 428 F.Supp.2d 857, 866 (S.D. Ind. 2006). The parties agree that Ms. Northington's estate's battery claim rises or falls with the § 1983 excessive force analysis as the issue is whether the officers used unreasonable force. If so, the city liable for battery; if not, it is not liable.

A claim that an officer used excessive force in seizing an individual is "analyzed under the Fourth Amendment's objective reasonableness standard." Graham v. Connor, 490 U.S. 386, 388 (1989). "[T]he test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application." Id. at 396. In analyzing the officers' reasonableness, the court looks to 1) the severity of the crime at issue, 2) whether the Ms. Northington posed an immediate threat to the safety of the officers or others, and 3) whether she was

actively resisted arrest or attempted to evade arrest by flight. Baird v. Renbarger, 576 F.3d 340, 344 (7th Cir. 2009). "The dispositive question is whether, in light of the facts and circumstances that confronted the officer (and not 20/20 hindsight), the officer behaved in an objectively reasonable manner." Padula v. Leimbach, 656 F.3d 595, 602 (7th Cir. 2011).

The incident must be "carve[d] up" into segments to determine if the officers' actions were reasonable at each stage. Deering v. Reich, 183 F.3d 645, 652 (7th Cir. 1999). The court considers the officers' actions in light of Ms. Northington's mental health crisis. *See e.g.* Turner v. City of Champaign, 979 F.3d 563, 568 (7th Cir. 2020); Bruce v. Guernsey, 777 F.3d 872, 876 (7th Cir. 2015). The undisputed facts demonstrate that Ms. Northington was having a mental health crisis and that the officers, to some extent, knew that she was mentally ill and experiencing an episode. Ms. Northington's estate alleges that the officers' decisions to detain Ms. Northington, handcuff her, roll her onto her stomach, and place a knee on her back during a mental health crisis, weren't reasonable under the Fourth Amendment.

### The Officers Detain Ms. Northington

The City argues that the officers' decision to detain Ms. Northington during her mental health crisis was reasonable. Ms. Northington's estate argues that the officers' decision to detain Ms. Northington wasn't reasonable because she wasn't an immediate threat when she was seated alone in the pew as the on-duty officers arrived.

19

Ms. Northington's estate argues that the severity of the crime (likely battery) that started the incident was a very low-level offense so that should weigh in favor of Ms. Northington in determining the reasonableness of the officers' behavior. [Doc. No. 81 at p. 18]. "Low-level offense" doesn't properly characterize the nature of the situation. Ms. Northington wasn't necessarily being arrested for battery, but rather detained for her mental health crisis. "[A] mental-health seizure is lawful if there is probable cause to believe that the person is a danger to herself or others." Bruce v. Guernsey, 777 F.3d 872, 876 (7th Cir. 2015). Indiana Code § 12-26-4-1 permitted the officers to detain Ms. Northington because they believed she was experiencing a mental health crisis, she was a danger to herself and others, and she needed hospitalization or treatment.

In support of its argument, Ms. Northington's estate relies on multiple cases for the proposition that courts have denied summary judgment involving plaintiffs engaged in more physically threatening behavior than Ms. Northington. See e.g. Sturm v. City of Indianapolis, No. 1:14-CV-00848-RLY-MPB, 2016 WL 2894434, at *9 (S.D. Ind. May 18, 2016); Mcphaul v. Ball State Univ. Police, No. 1:14-CV-623-JMS-MJD, 2016 WL 1077043, at *3 (S.D. Ind. Mar. 18, 2016). These are distinguishable from Ms. Northington's case. These cases involve multiple accounts of officers' behavior that created a question of fact, and the conduct in question was less severe – twisting and turning a little, walking away from officers, video recording officers, and clenching fists. Id.; see also Rhodes v. State, 20 N.E.3d 233 (Ind. Ct. App. 2014); A.C. v. State, 929 N.E.2d 907 (Ind. Ct.

App. 2010). The undisputed facts show that Ms. Northington's behavior rose to a greater level.

It's undisputed that the police were called to scene in response to Ms. Northington's behavior. The officers were informed that she had a history of mental health issues. Ms. Northington had physically assaulted or threatened to assault parishioners, and her behavior was erratic. Officers called an ambulance to get her treatment. When the additional officers arrived on scene, Ms. Northington was sitting calmly at a pew, but when Officer Haley and Officer Cooper approached her, she immediately yelled at them and punched them. In hindsight, it might have been a better choice to allow Ms. Northington to remain seated at the pew until an ambulance arrived, but the officers' actions must be judged from the perspective of a reasonable officer on the scene. Graham v. Connor, 490 U.S. 386, 396 (1989). Based on the undisputed evidence, the officers had probable cause to detain Ms. Northington – whether because of her physical violence towards multiple people on the scene or for her mental health crisis. It might not have been best practice to approach someone who is experiencing a mental health crisis, but the officers' decision to detain Ms. Northington didn't violate the Fourth Amendment.

### The Officers Handcuff Ms. Northington

The City argues that the officers' decision to place Ms. Northington in handcuffs was also objectively reasonable. Ms. Northington's estate doesn't dispute the reasonableness of handcuffing Ms. Northington, and the officers were

permitted to use reasonable force, such as handcuffs[3], to detain Ms. Northington. Graham v. Connor, 490 U.S. 386, 396 (1989). At that point, Ms. Northington wasn't passively resisting lawful detention. *See* Turner v. City of Champaign, 979 F.3d 563, 569 (7th Cir. 2020); Est. of Phillips v. City of Milwaukee, 123 F.3d 586, 592-593 (7th Cir. 1997). "The police may use significant force to subdue someone who is actively resisting lawful detention." Turner v. City of Champaign, 979 F.3d 563, 569 (7th Cir. 2020). The undisputed facts show that Ms. Northington's behavior was actively resisting detention. Ms. Northington approached two police officers and punched them. She continued to resist and struggle when the officers tried to put handcuffs on her. During the struggle, Ms. Northington punched Officer Cooper in the back on the head and she continued to pull away and spit on the officers. Handcuffs, given the circumstances, were a constitutionally permissible way of detaining Ms. Northington given her active resistance.

### An Officer Places Ms. Northington in the Prone Position, and an Officer Places his Knee on Ms. Northington's Back

The City argues that the officers' decision to move Ms. Northington from the pews to the center aisle, place her in the prone position while handcuffed, and place a knee on her back was reasonable under the circumstances of this

---

[3] There is no evidence in the record that the handcuffs were too tight; that the handcuffs themselves caused any injury, numbness, or pain; and no evidence that Ms. Northington complained about pain or injury from the handcuffs. *See e.g.* Day v. Wooten, 947 F.3d 453, 461 (7th Cir. 2020).

case.[4] Ms. Northington's estate makes several arguments that the officers' actions weren't reasonable and that there is a question of fact as to whether Ms. Northington was resisting when she was thrashing around in the prone position. In deciding whether force was reasonable under the Fourth Amendment, the amount of force that is justified increases as the confrontation escalates. Lanigan v. Village of East Hazel Crest, 110 F.3d 467, 475–476 (7th Cir.1997).

Ms. Northington's estate argues that Ms. Northington wasn't resisting arrest while lying prone in the aisle because she doesn't meet the elements of the criminal charge "resisting law enforcement" under Indiana Code § 35-44-3-1(a)(1). Whether anyone violated Indiana law doesn't resolve whether someone resisted officers. See e.g. Turner v. City of Champaign, 979 F.3d 563, 569 (7th Cir. 2020); Est. of Phillips v. City of Milwaukee, 123 F.3d 586, 593 (7th Cir. 1997).

Ms. Northington's estate also argues that the officers violated best policing practices and department specific policies and procedures. As already discussed, the court can't rely on Mr. Pusin's expert opinion in determining summary judgment. Mr. Pusin's only admissible opinion is that the officers didn't comply with IMPD policy and that the conduct was a departure from generally accepted police practices regarding the use of force, positional asphyxia, and excited

---

[4] Ms. Northington had a cloth covering her mouth. Ms. Northington's estate doesn't argue that this contributed to her death or that placing the cloth over her mouth was excessive force, so the court doesn't address it.

delirium[5]. The City's only response to Mr. Pusin's conclusions is that his report and opinions shouldn't be considered by the court.

Police training policies and best practices inform, but don't define what is reasonable under the Fourth Amendment. United States v. Brown, 871 F.3d 532, 536–537 (7th Cir. 2017). "The excessive-force inquiry is governed by constitutional principles, not police-department regulations.... Put another way, a police officer's compliance with the rules of his department is neither sufficient nor necessary to satisfy the Fourth Amendment's reasonableness requirement." Id.; see also Mays v. Dart, 974 F.3d 810, 823-824 (7th Cir. 2020). Restraining an obese person in a prone position is not, in and of itself, excessive force when the person had to be restrained. Est. of Phillips v. City of Milwaukee, 123 F.3d 586, 593 (7th Cir. 1997). A violation of policy isn't dispositive of excessive force under the Fourth Amendment, but it is relevant in determining whether the officers' actions were reasonable. United States v. Brown, 871 F.3d at 537. The policing polices are relevant and can inform a jury whether the officers were reasonable in placing Ms. Northington in the prone position while handcuffed and with a cloth covering her face.

Ms. Northington's estate next argues that Ms. Northington was no longer a threat once in handcuffs and laying in the prone position because a reasonable jury could infer that her actions were an indication that she was fighting to

---

[5] Mr. Pusin offered several conclusions about the reasonableness of the officers' conduct. These are inadmissible legal conclusions and wouldn't otherwise be considered by the court. See Good Shepherd Manor Found., Inc. v. City of Momence, 323 F.3d 557, 564 (7th Cir. 2003).

breathe. It argues that Ms. Northington's obesity, the police officers' knowledge of the dangers of the prone position, and Ms. Northington's thrashing around creates a jury question as to whether continuing to hold Ms. Northington in the prone position and placing a knee on her lower back is objectively reasonable.

Restraining an obese person in a prone position isn't necessarily excessive force, even during a mental health crisis. Est. of Phillips v. City of Milwaukee, 123 F.3d 586, 594 (7th Cir. 1997). But in situations where an officer's force causes unexpectedly severe injuries due to a condition, in this case, death, reasonableness is assessed objectively based on what the officer knew at the time force was applied. Turner v. City of Champaign, 979 F.3d 563, 570 (7th Cir. 2020). Abdullahi v. City of Madison, 423 F.3d 763 (7th Cir. 2005) is instructive.

In Abdullahi, an officer knelt on the arrestee's upper back after the arrestee already was in a prone position that resulted in the arrestee dying within two and a half minutes. Abdullahi v. City of Madison, 423 F.3d 763, 766 (7th Cir. 2005). The court of appeals determined that a reasonable jury could find that kneeling on an arrestee with enough force to cause his death was excessive. Therefore, there was a disputed fact that should go to trial regarding the reasonableness of the force used and whether it was excessive. Id. at 769-770. Multiple factual inferences were reasonable as to how hard the officer was kneeling on the arrestee's back, and whether the officers' conduct caused the arrestee's death. Id. at 771.

The City relies on Thompson v. City of Indianapolis, No. 115-CV-01712-TWP-DML, 2017 WL 4365967 (S.D. Ind. Sept. 29, 2017), Estate of Phillips v. City

of Milwaukee,123 F.3d 586 (7th Cir. 1997), and Turner v. City of Champaign, 979 F.3d 563 (7th Cir. 2020) to support the proposition that the officers were reasonable. These cases are factually distinguishable. Thompson included no evidence that an obese arrestee asked officers to get off him while being placed in the prone position. 2017 WL 4365967, at *4-5. The Thompson arrestee also stopped breathing after being injected with a sedative and moved onto his back on a stretcher, not while in the prone position. Id. In Estate of Phillips, the court determined that the relevant medical evidence didn't reveal injuries consistent with excessive force. Unlike Ms. Northington's potential cause of death, the Phillips arrestee's death was a heart condition –a hidden condition. Estate of Phillips v. City of Milwaukee, 123 F.3d 586, 594 (7th Cir. 1997). Lastly, Turner v. City of Champaign, the court emphasized that the estate offered no evidence that the arrestee wasn't resisting and that he was struggling to breathe. 979 F.3d at 570. The Turner court also emphasized that the autopsy report didn't support the theory that the arrestee couldn't breathe, unlike Ms. Northington's autopsy report. Id.

Given all of the circumstances, a reasonable jury could find that Ms. Northington's thrashing around, the officers' knowledge of the risk of placing an obese person in a prone position, and her telling the officers to get off her was enough to show that her behavior couldn't have been mistaken as resistance.[6]

---

[6] Ms. Northington's estate contends that Ms. Northington told "the officers 'I can't breathe' and 'get off me'" but provides no citation to the evidence. [Doc. No. 81 at p. 18]. The defendants' brief cites to Officer Haley's testimony that Ms. Northington stated, "get off me." [Doc. No. 75 at p. 11]. The court couldn't find evidence of Ms. Northington stating, "I can't breathe" other than in the

As a result, this case is most like Abdullahi v. City of Madison, 423 F.3d 763 (7th Cir. 2005). Like in Abdullah, Ms. Northington's estate offers evidence to support its theory that she was struggling to breathe, and that the officers had enough information to determine that she shouldn't have been placed in the prone position: Ms. Northington telling officers to get off her, police policies warning officers about the risk of the prone position and asphyxia, the officers' knowledge of her mental illness, and Ms. Northington's thrashing around to get out of the prone position. In other words, there is enough evidence for a jury to determine that her condition wasn't hidden to the officers at the time she was placed in the prone position. See e.g. Turner v. City of Champaign, 979 F.3d 563, 570 (7th Cir. 2020); Est. of Phillips v. City of Milwaukee, 123 F.3d 586, 594 (7th Cir. 1997). The autopsy report creates a permissible, reasonable inference that the officers' choices to place handcuffed Ms. Northington in the prone position caused her death. A summary judgment court can't choose between competing inferences. The evidence creates a question of fact as to whether the officers' actions were reasonable under the circumstances, and summary judgment must be denied on this basis.

---

autopsy report. [Doc. No. 74-15]. However, the report doesn't identify who or what report told the coroner that Ms. Northington said that. "I can't breathe" is hearsay, within hearsay, within hearsay. In the second layer of hearsay, the declarant isn't identified, so the court doesn't rely on it in its summary judgment analysis. Awalt v. Marketti, No. 11-C-6142, 2015 WL 4338048, at *12 (N.D. Ill. July 15, 2015) ("Plaintiff will first need to establish a sufficient evidentiary foundation for admission of the statements, including identifying the speakers."); see also Roloff v. Sullivan, 772 F. Supp. 1083, 1088 (N.D. Ind. 1991), aff'd, 975 F.2d 333 (7th Cir. 1992).

*Conclusion*

The court GRANTS IN PART AND DENIES IN PART the defendants' motion for summary judgment [Doc. No. 73]. The court encourages the parties to confer and inform the court of their positions as to whether the court should retain supplemental jurisdiction over this state law claim.

SO ORDERED

ENTERED:   March 31, 2023

                                    /s/ Robert L. Miller, Jr.
                                    Judge, United States District


Distribution:
All counsel of record