UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ESTATE OF ELEANOR NORTHINGTON,  )<br>  )<br>　　　　　Plaintiff,　　　　　　　　　　)<br>  )<br>　　　　　v.　　　　　　　　　　　　　　)　　Case No. 1:21-cv-00406-TWP-TAB<br>  )<br>CITY OF INDIANAPOLIS,　　　　　　　)<br>  )<br>　　　　　Defendant.　　　　　　　　　)  | |

### ENTRY ON MOTIONS FOR JUDGMENT AS A MATTER OF LAW AND NEW DAMAGES TRIAL, MOTION FOR REMITTITUR, AND PENDING MATTERS

This matter is before the Court on Defendant City of Indianapolis' ("the City") Motion for Judgment as a Matter of Law and for New Trial (Filing No. 202) and Motion for Remittitur (Filing No. 204). Also pending are a Judgment in Civil Action (Filing No. 219), Revised Judgement in Civil Action (Filing No. 220) and Bill of Costs (Filing No. 222), filed by Plaintiff Estate of Eleanor Northington ("the Estate"). This Court previously denied the City's motion for judgment as a matter of law and for new trial on the issue of liability and ordered the City and the Estate to attend a settlement conference with the Magistrate Judge on the remaining issues. With the parties unable to reach a compromise, (*see* Filing No. 218), the Court now rules on those remaining issues. The City's request for judgment as a matter of law is pursuant to Federal Rule of Civil Procedure 50(b), and its motion for a new trial is pursuant to Federal Rule of Civil Procedure 59. For the reasons explained below, the City's motions are **denied.**

### I. BACKGROUND

The previous Order on the City's motion for judgment as a matter of law and for new trial as to the issue of liability, (Filing No. 213), lays out more completely the evidence presented to the jury, which the Court now incorporates by reference into this discussion. In this Order, the

Court references the procedural background relevant to the damages determination and integrates other facts of the case as needed.

After summary judgment was granted on the federal and state law claims against the individually named police officers but denied as to the state law claim of battery against the City, this Court accepted supplemental jurisdiction on the remaining Indiana state law claim. (Filing No. 109).[1] Near the eve of trial, the Court granted the City's Motion to Bifurcate Trial Between Liability and Damages, (Filing No. 173), and stated "[t]he February 21, 2024, jury trial will be on the issue of liability.  If the jury finds in favor of the City on the issue of liability, the jury will then hear evidence on the issue of damages."  (Filing No. 182 at 4.)  When the Estate concluded its case-in-chief on the issue of liability, the City made an oral motion for judgment as a matter of law pursuant to Rule 50(a) seeking a judgment of "not liable", (Filing No. 198 at 37), which the Court denied after hearing argument and a short break.  *See id.* at 36–42.  At the conclusion of its case-in-chief, the City orally renewed its motion for judgment as a matter of law on the issue of liability under Rule 50(b), which the Court denied after hearing argument.  *See id.* at 53–57.  Following deliberations, the jury found the City liable for committing battery against Eleanor Northington ("Ms. Northington"). (Filing No. 193.)

Before the second trial commenced, the Court and counsel for the parties discussed the Court's order that if the jury finds in favor of the City on the issue of liability, the jury will then hear evidence on the issue of damages. (Filing No. 198 at 110–112.)  The City indicated it was prepared to proceed (Filing No. 198 at 111). Initially, the Estate indicated unreadiness to proceed;

---

[1] Although the district court ordinarily should relinquish jurisdiction over supplemental state law claims if all federal claims are dismissed before trial,"[h]ere, the parties have conferred and agree that the district court should exercise supplemental jurisdiction over any remaining state law claims given that this case has been pending for a lengthy time, discovery is closed, dispositive motions have been adjudicated, and the case is set for trial. Accordingly, the Court accepts supplemental jurisdiction over the remaining state law claim. *See Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 608 (7th Cir.2008) (concluding that length of time since litigation began and completion of discovery favored district court's decision to retain jurisdiction)." *See* Filing No. 109 at 2.

the Court emphasized that the jury had "heard everything" (*i.e.*, the evidence presented at the first trial), and counsel for the Estate ultimately agreed that the second trial "needs to be done with this jury." *Id.* at 112.

The City then orally moved *in limine* for the issue of damages to be "limited solely to the … pain and suffering experienced by Ms. Northington in her encounter with the police" and asked to confirm that the Estate would not offer "any of the medical bills for treatment of Ms. Northington, because all those bills are written off." (Filing No. 200 at 4.) In response to the oral motion in *limine*, counsel for the Estate agreed and stated, "I think it's fair." *Id.* at 5. The Court granted the motion *in limine*, and the Estate also confirmed it would not introduce any medical bills into evidence. *See id.*

The Estate called D'Asia Montgomery, Ms. Northington's daughter, to testify, and she detailed the battery to her mother, from her perspective. (Filing No. 200 at 7–14.) The City did not call any witnesses or present any evidence on the issue of damages. The City made no pre-verdict motion for judgment as a matter of law at the close of evidence or at any time before submission of the damages issue to the jury. Although neither party formally moved to incorporate the evidence from the first trial on the issue of liability, both parties discussed that evidence in their closing arguments in the damages trial.

Outside of the jury's presence, final jury instructions were discussed and settled. In response to an instruction that directed the jury to decide the amount of money, if any, that would fairly compensate Ms. Northington, the City proposed alternative language requiring compensation only for pain and suffering Ms. Northington experienced "while she was conscious." *Id.* at 15. The City indicated that its proposed language was "necessary and just for the challenge of the evidence and the situation of trying to limit it" and it would "help limit the jury to a just

verdict." *Id.* at 17.  After some discussion, the Estate's counsel stated "[a]nd that's fine. I have no problem with that language." *Id.*  By agreement of the parties, the Court modified the language and eventually placed it into a final jury instruction. *Id*. at 17-18.

The Court instructed the jury that it "may only award damages for pain and suffering Eleanor Northington suffered as a result of the battery while she was able to experience pain and suffering." *Id.* at 33; *see also* Filing No. 188-2 at 6.  In closing argument, the Estate requested damages in the amount of $500,000.00 and the City suggested an award of $1,000.00.  Following deliberations, the jury awarded damages in the amount of $500,000.00 to the Estate (*see* Filing No. 200 at 36; *see also* Filing No. 193 at 2).

## II.  LEGAL STANDARDS

The City moves for relief under Federal Rules of Civil Procedure 50 and 59.  Rule 50 provides that judgment may be entered against a party who has been fully heard on an issue during a jury trial if a "reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue." *Passananti v. Cook Cnty.*, 689 F.3d 655, 659 (7th Cir. 2012) (quoting Fed. R. Civ. P. 50(a) (motion for judgment as a matter of law)); *see* Fed. R. Civ. P. 50(b) (renewed motion for judgment as a matter of law).

Under Federal Rule of Civil Procedure 59(a)(1), a "court may, on motion, grant a new trial on . . . some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Fed. R. Civ. P. 59(a)(1)(A).  A motion for a new trial may be granted if the verdict was against the manifest weight of the evidence. *Mejia v. Cook Cnty., Ill.*, 650 F.3d 631, 633 (7th Cir. 2011).  In considering "whether the verdict was against the manifest weight of the evidence, the district court has the power to get a general sense of the weight of the evidence, assessing the credibility of the witnesses and the comparative strength of the facts put forth at trial." *Whitehead v. Bond*, 680 F.3d 919, 928 (7th Cir. 2012) (citation and

4

quotation marks omitted); *see also Byrd v. Blue Ridge Rural Elec. Co-op., Inc.*, 356 U.S. 525, 540 (1958) ("The trial judge in the federal system has powers denied the judges of many States to comment on the weight of evidence and credibility of witnesses, and discretion to grant a new trial if the verdict appears to him to be against the weight of the evidence.").

A "new trial should be granted 'only when the record shows that the jury's verdict resulted in a miscarriage of justice or where the verdict, on the record, cries out to be overturned or shocks our conscience.'" *Estate of Burford v. Accounting Practice Sales, Inc.*, 851 F.3d 641, 646 (7th Cir. 2017) (citation omitted). Said differently, the court will "uphold a jury verdict . . . as long as a reasonable basis exists in the record to support [the] verdict," *Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 440 (7th Cir. 2010), and construes the evidence "in the light most favorable to the prevailing party." *Carter v. Moore*, 165 F.3d 1071, 1079 (7th Cir. 1998).

When evaluating an award of compensatory damages and considering whether to grant remittitur, district courts in this Circuit ask whether: (1) the award is monstrously excessive; (2) there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas; and (3) whether the award is roughly comparable to awards made in similar cases. *See G.G. v. Grindle*, 665 F.3d 795, 798 (7th Cir. 2011) (*citing Pickett v. Sheridan Health Care Ctr.*, 610 F.3d 434, 446 (7th Cir. 2010)).

### III.  DISCUSSION

**A.    Rule 50 Affords No Relief**

As an initial matter, the Court finds that Rule 50 affords no relief to the extent that judgment as a matter of law is now sought concerning the damages verdict. In making the argument that the "jury also did not have a sufficient evidentiary basis for the size of its verdict," (Filing No. 203 at 18), the City cannot rely on the civil procedure mechanism without having first preserved its right by moving for judgment as a matter of law on the issue of damages — which it failed to do.

Generally, a motion for judgment as a matter of law is permitted to be raised once "a party has been fully heard on an issue" during jury trial "any time before the case is submitted to the jury." Fed. R. Civ. P. 50(a). The specific verdict at stake here is the second one, involving the jury's award of compensatory damages for the pain and suffering Ms. Northington suffered as a result of the City's battery while she was able to experience pain and suffering. The Estate had not been fully heard on the issue until it concluded its evidence during the second trial. Though the City had previously moved for judgment as a matter of law, it only did so as to the issue of liability,[2] and it did not re-move (move again) at the conclusion of the Estate's evidence on the issue of damages.

Giving effect to the plain language of the rule, the Court finds Rule 50(a) requires that a party move for judgment as a matter of law at the close of all evidence on an issue in order for the consideration to be preserved post-trial, and that failure to do so is fatal. The reason for so requiring is clear. Paragraph (a)(2) of the Rule contains a

> requirement that a motion for judgment be made prior to the close of the trial, subject to renewal after a jury verdict has been rendered. The purpose of this requirement is to assure the responding party *an opportunity to cure any deficiency in that party's proof that may have been overlooked until called to the party's attention by a late motion for judgment*.

Fed. R. Civ. P. 50 advisory committee's note to 1991 amendment (emphasis added). Since no pre-verdict motion was forthcoming at the close of evidence or at any time before submission of the damages issue to the jury, this relief is unavailable to the City insofar as it is sought. *See Sunny Handicraft (H.K.) Ltd. v. Envision This! LLC*, 66 F.4th 1094, 1098 (7th Cir. 2023) ("A litigant

---

[2] Rule 50(a)(2) expressly requires that any such motion "must specify the judgment sought and the law and facts that entitle the movant to the judgment." In moving under Rule 50(a) at the trial on liability, the City specifically asked for a "judgment of *not liable* on behalf of the defendant . . .", (Filing No. 198 at 37) (emphasis added), before later clarifying that no evidence had been presented "that the defendants or officers touched Ms. Northington in a way that was intending to cause — that was angry, rude, or unlawful." *Id.* In context, the motion solely addressed liability, not damages.

cannot wait until the trial is over and cry 'Gotcha!'  The function of Rule 50(b) is to provide a means to reconsider issues raised earlier, such as in a motion for summary judgment or a mid-trial motion under Rule 50(a).  We do not allow litigants to bypass arguments when making Rule 50(a) motions, only to raise them after the trial has ended.").  Accordingly, the City's Rule 50 Motion is **denied**.

B.        The Damages Verdict Does Not Warrant a New Trial

The City seeks a new trial on the jury's damages award, pursuant to Rule 59.  The City argues that the jury lacked a sufficient evidentiary basis for the size of its verdict and asserts that, "[w]ithout admissible evidence to base its verdict, the jury's extraordinary damages award had to have been based upon the fact of Ms. Northington's death."  (Filing No. 203 at 19.)

The Estate responds that the battery committed "was not mere incidental touching" but rather the result of five Indianapolis Metropolitan Police Department ("IMPD") officers "using their strength to subdue [Ms. Northington] and keep her on her stomach in triple handcuffs behind her back", "an IMPD officer's knee in her back", and an officer "straddling her hips and holding her legs down."  (Filing No. 208 at 3.)  The Estate draws upon the theory it put forth at the liability trial: though Ms. Northington was experiencing excited delirium, the officers "ignored the IMPD General Ordinance 8.1, where it specifically states placing an obese person in a prone position creates a greater increased risk of positional asphyxia."  *Id.*  The Estate contends that, Officer Bruce Jackson ("Officer Jackson"), a trained mental health officer "who had witnessed [Ms.] Northington's schizophrenic episode for more than an hour," should have called an ambulance but instead requested "more officers who had no experience dealing with schizophrenia or excited delirium."  *Id.* at 4, 3.  Instead of leaving her "alone sitting on the pew" and keeping other officers from approaching, he incorrectly "helped" the other four officers "struggle with [her] and take her

to ground on her stomach," a dangerous position for obese individuals experiencing excited delirium, "until [she] was not breathing . . . ." *Id.* at 4.

After due consideration, the Court cannot conclude that the verdict for compensatory damages was not rationally connected to admissible evidence or contrary to its manifest weight. The jury was instructed to award damages that would reasonably compensate for the physical pain and discomfort Ms. Northington experienced during the battery, with the express proviso that such an award was only to compensate for the pain and suffering she suffered *while able to experience pain and suffering* (*see also* Filing No. 188-2 at 6). In light of the evidence offered at the liability and damages trials, the Court cannot say the jury contravened its instructions.

The evidence shows that Officer Jackson, a Behavioral Health Specialist who had encountered more than fifty (50) mentally ill individuals, observed Ms. Northington exhibit certain signs that IMPD General Ordinance 8.1 instructed may indicate a subject's "potentially dangerous" state of hypothermia resulting from excited delirium, and would indicate a "greatly increased risk" of positional asphyxia if the subject were to be placed in a prone position that interfered with breathing[3] (Tr. Ex. 117 at 5, art. III ¶ B; *see* Filing No. 197 at 130). At the time, Ms. Northington, who weighed more than three hundred pounds, was sweating profusely, appeared to have startling physical strength, and was experiencing excited delirium (Filing No. 123 at 3).

Over the course of the incident during which Ms. Northington was battered, at least three of the five officers on the scene engaged her as she lay prone on the floor (*see* Filing No. 197 at 164), having tripped on a bench while officers moved her to the center aisle (*see* Filing No. 123 at 5). While she lay prone, Officer Hyde's shins, or knees and hands, were on Ms. Northington's calf,

---

[3] Officer Jackson understood excited delirium and was familiar with General Ordinance 8.1's teaching about the greatly increased risk of positional asphyxia (*see* Filing No. 197 at 129).

and he "used body weight" to hold "them" to the ground (*see* Filing No. 197 at 205–06). In addition, an officer had a knee in her lower back, *id.* at 42, and a third was at her head. *Id.* at 164.

The evidence suggests that, under the circumstances, officers left Ms. Northington lying prone for a "period of time longer than [was] absolutely necessary" (Tr. Ex. 117 at 4, art. III ¶ A.1). It further demonstrates that, as this occurred, officers placed various hands and knees on her legs, lower back, and head. The Estate also offered into evidence a departmental explanation of positional asphyxia as "[a] condition in which an extreme decrease in the amount of oxygen in the body is accompanied by an increase of carbon dioxide which may lead to loss of consciousness or death," *id.* at 1, regarding which the jury could make determinations. In light of this and the other evidence, the jury could infer the offending actions of the officers heightened a risk for positional asphyxia unique to Ms. Northington and further conclude she experienced it as a result.

Moreover, the jury heard, and was able to assess, the officers' accounts of the struggle on the ground that resulted in chest compressions and the eventual loss of consciousness. Perhaps most significantly, the jury was faced with Ms. Northington's undisputed and stipulated to cry while conscious that the officers should "get off of [her]" (*see* Filing No. 197 at 82; Filing No. 123 at 5). Construing the evidence in the light most favorable to the Estate—the prevailing party—a reasonable jury tasked with evaluating the extent of the battery could properly consider and afford such evidence great weight, especially since the harrowing statement was uttered while she writhed underneath the weight of numerous officers. It is further reasonable that an award amount such as the verdict's would be considered adequate compensation for the pain, discomfort, and suffering that Ms. Northington experienced.

Although the parties entered into stipulations concerning some of the substantive evidence, some witnesses gave contradictory and/or ambiguous testimony concerning the stipulated

evidence. "In setting damages, the jury's function is to weigh contradictory evidence, to judge the credibility of the witnesses, and to resolve factual disputes." *C & F Packing Co. v. IBP, Inc.*, 224 F.3d 1296, 1304 (Fed. Cir. 2000); *see also Indiana GRQ, LLC v. Am. Guarantee & Liab. Ins. Co.*, 2024 WL 1231260, at *11 (N.D. Ind. Mar. 22, 2024) (quoting *Carter*, 165 F.3d at 1079). Here, the jury waded through grim and often ambiguous testimony to evaluate a tragedy borne out by trained police officers.

The Court is aware of the difficulty of assigning monetary damages in cases where evidence of pecuniary damages cannot provide reliable valuation. Nevertheless, the Estate presented sufficient evidence on which a rational jury could base a non-pecuniary damages award without undue speculation. In short, after its thorough review of the trial testimony and evidence, the Court is not persuaded the fact and size of the verdict is a miscarriage of justice, and it will not disturb or otherwise substitute its judgment for the jury's determination. Accordingly, the City's motion for a new trial on damages is **denied**.

C.     **Remittitur is Not Proper**

In considering a request for remittitur, a district court must grant "proper deference to the jury's verdict and limit[ ] its inquiry to three questions: whether the award is monstrously excessive; whether there is no rational connection between the award and the evidence, indicating that it is merely a product of the jury's fevered imaginings or personal vendettas[;] and whether the award is roughly comparable to awards made in similar cases." *Farfaras v. Citizens Bank & Tr. of Chi.*, 433 F.3d 558, 566 (7th Cir. 2006) (citations and internal quotation marks omitted). The first factor, whether the award is "monstrously excessive," is "a vague one that may simply be another way of asking whether there is a rational connection between the award and the evidence." *Deloughery v. City of Chi.*, 422 F.3d 611, 619 n.4 (7th Cir. 2005) (quoting *Harvey v. Office of Banks & Real Estate*, 377 F.3d 698, 713–14 (7th Cir. 2004)).

The City argues that the Estate provided no evidence of special damages related to Ms. Northington's struggle with officers after falling to the floor. It concedes that, while it is reasonable to infer she felt some worry and emotional strain during the encounter, the verdict award was excessive based on the evidence presented. The City also submits that this award is not at all comparable to awards in similar cases.

The Court rejects the City's first argument which is basically a repeat of the argument made in the motion for a new trial. The City argues the Estate "failed to present evidence at trial that Ms. Northington suffered significant damages related to her immediate detention as opposed to her death which was not an issue before the jury." (Filing No. 212 at 2.) However, this Court has already discussed and determined the presented evidence was sufficient for a rational jury to base its award without undue speculation. Although the City regards the evidence as meager and scant, the jury did not take this view. *See* discussion section III.B. *supra*. *See Tullis v. Townley Eng'g & Mfg. Co.*, 243 F.3d 1058, 1068 (7th Cir. 2001). The jury was confronted with the City's argument that the force used was legally justified, or limited to that which was necessary to effectuate the detention, but nevertheless chose to view the evidence and the events of that night differently. The evidence viewed in the light most favorable to the winning party rationally supports the jury's damages verdict.

The Court's remaining task is to examine "whether the award is out of line with other awards in similar cases." *Fleming v. County of Kane*, 898 F.2d 553, 561 (7th Cir. 1990). The City cites a number of cases in which lesser damages "for a stand-alone battery claim" were granted and presents battery awards in Indiana ranging from $1.00 up to $330,265.00 (Filing No. 205 at 5). Without attempting to establish that they involved facts anything near comparable to the case at hand, or the date of the award, it is difficult to determine whether these awards are comparable.

11

Cases like these are of a highly fact-specific nature, and such comparisons as the City seeks to make are rarely dispositive. Moreover, the Court considers that the awards listed by the City were several years ago, and thus the current value of those awards may be considerably greater.[4] *See EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1286 (7th Cir. 1995) (Comparability of awards must be adjusted for the changing value of money over time.) Even if these cases contained factually similar circumstances (which they do not), they prove nothing except that some plaintiffs have received less money than the Estate; and importantly, they do not show the current award to be "monstrously excessive."

Indisputably, $500,000.00 is a large award for pain and suffering, but in the Court's view, not "monstrously excessive" if the jury believed Ms. Northington's evidence, as it apparently did. *See EEOC* at 1285–86. The jury was instructed that any damages verdict must be based solely on pain and suffering Ms. Northington suffered because of the battery while she was able to experience pain and suffering and that Ms. Northington's death was not an issue at trial.[5] The Court cannot say that this instruction was not followed. The Court's responsibility is not to fit this case into a perfect continuum of past harms and past awards. Our legal system confers on *juries* the function of placing a value on pain and suffering, both emotional and physical. "Judges do not inherently possess more wisdom than jurors in performing this function, and as such [courts] do not and should not have a 'chancellor's foot' veto,' authorizing [them] to revise at will the jury's

---

[4] A review of these cases was challenging because no case numbers are provided. The Court's cursory search for dates shows that some of the proposed comparable awards were issued years ago. For example, *Pachowicz v. Berg* (2012); *Cavillo v. Midtown Station* (2008); *R.Z. v. Police Officer Orlich* (2017); *Doescher v. Raess* (2008); *Bascal v. Schwartz* (2008).

[5] The Court acknowledges the City's arguments that the Estate's counsel intentionally disregarded multiple orders by persistently raising the issue of Ms. Northington's death, and notes that the City's objections when this occurred were sustained, counsel's comments were stricken, and the jury was properly instructed on the law and evidence they were to consider in reaching their verdict.

decision." *Deloughery v. City of Chi.*, 2004 WL 1125897, at *3 (N.D. Ill. May 20, 2004) (internal citation and quotation marks omitted), *aff'd*, 422 F.3d 611.

Based on the Court's assessment of the evidence, the comparable cases offered, and considering the leeway and deference that our system gives to juries, the Court concludes that remittitur is not proper in this case.

**D.      Other Filings Before the Court**

The Court will momentarily address various post-trial filings that the Estate filed while the City's motions for judgment as a matter of law and for remittitur were under advisement. The Estate's "Judgment in Civil Action" document (Filing No. 219) and "Revised Judgment in Civil Action" document (Filing No. 220) are premature to the extent they are motions seeking enforcement since the City's motions as to damages had not been finalized. Accordingly, the Court **denies** them both insofar as they can be properly characterized as motions — the pair of filings are styled, at least facially, as proposed orders.

Additionally, the Court acknowledges the Estate's Bill of Costs, (Filing No. 222), filed on July 1, 2024. Federal Rule of Civil Procedure 54 (d)(1) provides that "costs — other than attorney's fees — should be allowed to the prevailing party" unless a federal statute, the Federal Rules of Civil Procedure, or a court order provides otherwise. "The rule provides a presumption that the losing party will pay costs but grants the court discretion to direct otherwise." *Rivera v. City of Chi.*, 469 F.3d 631, 634 (7th Cir. 2006). Local Rule 54-1 clearly provides that a "party cannot recover attorney's fees and costs unless the party files and serves a bill of costs and a motion for fees within 14 days after final judgment is entered." The Court's entry of Final Judgment Pursuant to Federal Rule of Civil Procedure 58 occurred on February 23, 2024 (Filing No. 195). The Estate's Bill of Costs, filed with the Court 129 days afterwards, is well outside of the window allowed by

the local rules.  Since the Estate does not attempt to explain or excuse the untimely filing, the Court **denies** the bill of costs.

## IV.  CONCLUSION

For the reasons stated above, the City's Motion for Judgment as a Matter of Law and for New Trial (Filing No. 202) and Motion for Remittitur (Filing No. 204) are **DENIED as to the issue of damages**.  The Estate's Bill of Costs (Filing No. 222), as well as its Judgment in Civil Action, (Filing No. 219), and Revised Judgment in Civil Action, (Filing No. 220), are **DENIED**.

**SO ORDERED.**

Date:  7/18/2024

*[signature]*

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Larry W. Pleasants
LARRY PLEASANTS, PROFESSIONAL CORPORATION, ATTORNEY
larry@larrypleasants.com

Anthony W. Overholt
FROST BROWN TODD LLP
aoverholt@fbtlaw.com

Kiely C Keesler
CITY OF INDIANAPOLIS – OFFICE OF CORPORATION COUNSEL
kiely.keesler@indy.gov